**LUDWIG v. COMMISSIONER OF INTERNAL REVENUE.**

**DUTCHER v. SAME.**

Nos. 41, 42.

Circuit Court of Appeals, Second Circuit.

Dec. 22, 1941.

Roswell S. Nichols and Leonard Belford, both of New York City, for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Sherley Ewing, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

These appeals present a single question: Whether the taxpayer's stock in a New Jersey corporation became worthless in the year 1937 so as to entitle him to take the cost thereof as a deductible loss under section 23(e) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 23(e) (2). The Board sustained the commissioner's denial of such deduction.

There is no dispute as to the evidentiary facts. Prior to 1937 each of the taxpayers had purchased stock in Bankers Title & Mortgage Guaranty Company. This corporation was organized under the laws of New Jersey and was subject to the supervision and control of the Commissioner of Banking and Insurance of the State. Until March 21, 1933, the corporation was engaged in the business of guaranteeing titles to real estate, lending money on bond and mortgage and selling the mortgages or participations therein with guarantees of payment of principal and interest. On that date the Commissioner of Banking and Insurance directed the company to suspend its business of selling mortgages or mortgage participations. Thereafter until April 27, 1937, the company, when possible, made collections under its mortgages, rented and sold its real estate, distributing such receipts to the holders of the mortgages and participation certificates entitled thereto, and paid interest on outstanding mortgages and participation certificates. During the same period it continued to carry on its business of guaranteeing titles, renewing mortgages, etc. In April, 1937, following an examination of the company, the State Commissioner of Banking and Insurance directed the company to cease paying interest on its guaranteed mortgages and participation certificates. Such certificates amounted to $1,368,069.50. Thereupon the company applied to the Court of Chancery of New Jersey for relief under chapter 3 of the Laws of 1934, and on April 27th the court appointed the Commissioner trustee of the assets of the company. A plan of liquidation was then formulated, pursuant to which a new corporation was organized for the purpose of acquiring and liquidating the assets of the company. By order of the court on November 1, 1937, all the assets of the old company were conveyed to the new as of that date. The creditors of the old company received "special" stock in the new company which entitled them to elect four of its five directors; the stockholders of the old company received "common" stock entitling them to elect one of the directors. The new company was to pay the proceeds of the assets transferred to it to the creditors, including the "special" stockholders, in the order of their priority, and "to distribute the balance, if any, to the stockholders of the old company, and so to liquidate." No date was appointed for the completion of such liquidating. The balance sheets of the old company on April 27, 1937, showed an excess of assets over liabilities (apart from the capital stock of $200,000) in the amount of $32,918.88; and on November 1, 1937, they showed a similar excess of $31,269.82. But the Board found that the assets were over-valued in a total amount of $317,850.04. Thus insolvency existed to the extent of more than $86,000, without taking account of the expenses necessarily to be incurred in liquidation, such as broker's commissions for selling the real estate. Nevertheless the Board concluded that the worthlessness of the stock was not proven, because each old stockholder got one share of no par stock in the new company for each share ($50 par) in the old company. "In other words, it was recognized that there was a potential equity left for the old stockholders."

In our opinion the conclusion that the stock was not proven worthless in 1937 cannot be supported; it is contradicted by the Board's prior specific findings that the old company transferred all its assets to the corporate liquidator (the new company) and was insolvent to a substantial extent at the time. The new stock could have no value greater than the old, which was zero, for the new company was not to continue the business but was merely to liquidate the assets. Nor did the substitution of new stock for old give the stockholders of the old company any greater rights, except to elect one-fifth of the directors, than they would have had if the plan for liquidation had completely ignored them. See Kipp v. Fidelity Title & Mortgage Guaranty Co., 116 N.J.Eq. 409, 174 A. 229, affirmed 117 N.J.Eq. 588, 177 A. 83. In the light of the well known conditions in the real estate market in 1937, the mere possibility that the property might at some distant future date be liquidated for enough more than its then value to leave a balance for stockholders was too remote and speculative a hope to justify a stockholder in postponing his loss until final liquidation. As Mr. Justice Stone said in United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 402, 47 S.Ct. 598, 600, 71 L.Ed. 1120, "a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment." This principle has been applied to situations closely similar to the case at bar. See Commissioner v. Winthrop, 2 Cir., 98 F.2d 74; Thompson v. Commissioner, 2 Cir., 115 F. 2d 661; Connelly v. Commissioner, 3 Cir.,

121 F.2d 686; Young v. Commissioner, 2 Cir., 123 F.2d 597, decided November 17, 1941. In those cases, it is true, the Board's conclusion of worthlessness was affirmed, while here we reverse it. But it is only the inference which the Board drew from its specific findings of fact that we reverse. Those specific findings require an inference exactly contrary to the one made by the Board. Accordingly its determinations of deficiencies are reversed.